**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MELISSA KIVO, individually and on behalf of
a class,

                Plaintiff,               **MEMORANDUM OF**
                                                 **DECISION AND ORDER**
               -against-               13-CV-4170 (ADS)(AKT)

BLUMBERG EXELSIOR, INC., and DOES 1-
10,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Kleinman, LLC**
*Attorneys for the Plaintiff*
626 RXR Plaza
Uniondale, NY 11556-0626
        By: Abraham Kleinman, Esq., Of Counsel

**Edelman, Combs, Latturner & Goodwin, LLC**
*Attorneys for the Plaintiff*
120 S Lasalle St
18th Floor
Chicago, IL 60603
        By:  Cathleen, M. Combs, Esq.
              Tiffany N. Hardy, Esq., Of Counsel

**Tarter Krinsky & Drogin LLP**
*Attorneys for the Defendant Blumberg Excelsior, Inc.*
1350 Broadway
New York, NY 10018
        By:  Andrew N. Krinsky, Esq.
              Maxwell D. Rosenthall, Esq, Of Counsel

**Arkin Kaplan Rice LLP**
*Attorneys for the Defendant Blumberg Excelsior, Inc.*
590 Madison Avenue
New York, NY 10022
        By:  Alan R. Arkin, Esq., Of Counsel

**NO APPEARANCES:**
Does 1-10

**SPATT, District Judge**.

On July 23, 2013, the Plaintiff Melissa Kivo (the "Plaintiff") commenced this action on behalf of herself and a putative class, alleging that the Defendant Blumberg Excelsior, Inc. (the "Defendant") violated Section 1681c(g) of the Fair and Accurate Credit Transactions Act of 2003 (FACTA), which requires that merchants truncate the credit card information they include on customers' receipts. The Plaintiff, who made an online, credit card purchase from the Defendant, contends that the Defendant violated Section 1681c(g) by including the expiration date of her credit card in the computer-generated receipt that was mailed to her. She argues that she is therefore entitled to statutory damages under FACTA Section 1681n.

"Section 1681n, however, only provides for liability where the merchant's noncompliance is willful, and the Supreme Court has held that a merchant is not in willful noncompliance when the merchant's interpretation of the statute is objectively reasonable." Simonoff v. Kaplan, Inc., 10 CIV. 2923 (LMM), 2010 WL 4823597, at *1 (S.D.N.Y. Nov. 29, 2010). This Court finds that the Defendant's proposed interpretation of Section 1681c(g) – interpreting the Section as applying only to receipts that result from in-person transactions – is objectively reasonable and thus grants the Defendant's motion to dismiss.

### I. DISCUSSION

A. Legal Standard

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (citing Levy v.

Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001)). However, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

B. The Relevant FACTA Sections: 1681c(g) and 1681n

FACTA was passed in 2003 as an amendment to the Fair Credit Reporting Act (FCRA). Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108–159, § 1, 117 Stat.1952, 1952 (2003). "FACTA Section 1681c(g) imposes restrictions on the disclosure of credit and debit card information by those who accept the cards for business transactions." Simonoff, 2010 WL 4823597, at *1. In pertinent part, Congress provided:

> Truncation of credit card and debit card numbers.
>
> (1) In general
>
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder <u>at the point of sale or transaction.</u>

15 U.S.C. § 1681c(g)(emphasis added). FACTA Section 1681n outlines civil liability for willful noncompliance with FACTA sections, including Section 1681c. It provides in relevant part:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, whichever is greater;
>
> . . . .

3

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

. . .

15 U.S.C. § 1681n (2009). Here, the Plaintiff does not claim actual damages and seeks only the statutory damages of $100 to $1,000 per violation.

C. The Defendant's Proposed Interpretation of Section 1681c(g) and The Defendant's Argument of Objective Reasonableness

The Defendant argues that Section 1681c(g) does not apply to confirmations or receipts it sends by mail to its customers because such documents are not provided to the customer "at the point of sale or transaction." Further, the Defendant argues that any purported violations of Section 1681c(g) were not willful and thus the company is not liable under Section 1681n.

C. Is the Defendant's Interpretation of Section 1681c(g) is Objectively Reasonable?

This Court finds that the Defendant's reading of Section 1681c(g) is objectively reasonable, and thus the Defendant cannot be held liable under Section 1681n for a willful violation of FACTA. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 68-71, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). This finding makes it unnecessary to resolve the merits of the Defendant's interpretation of Section 1681c(g).

1. Safeco's Holdings

The scope of the term "willfulness" in the FCRA statute was discussed by the Supreme Court in Safeco. In that case, consumers sued insurers for violation of FCRA § 1681m(a), which requires that notice be provided to any consumer subjected to "adverse action . . . based in whole or in part on any information contained in a consumer [credit] report." Safeco, 551 U.S. at 52. The Safeco Court held that "willful" noncompliance with FCRA includes both knowing and

4

reckless noncompliance. Id.  Also, the Court held that a regulated entity cannot be in willful noncompliance when its interpretation of the statute is "not objectively unreasonable . . ." and explained that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 68-70.

"Courts have specifically held that defendants' Safeco based arguments regarding the reasonableness of their statutory interpretation are grounds upon which to grant a motion to dismiss." Simonoff, 2010 WL 4823597, at *3; see King v. Movietickets.com, Inc., 555 F. Supp. 2d 1339, 1342-43 (S.D. Fla. 2008) ("[P]laintiff has again failed to sufficiently allege that Defendant willfully violated § 1681c(g), and I grant Defendant's Motion to Dismiss on this additional ground for dismissal.").

2. The Principles of Statutory Interpretation

As noted above, the Court need not conclusively interpret Section 1681c(g) to determine whether the Defendant is liable under Section 1681n and whether the Defendant's motion to dismiss should be granted.  This Court need only determine whether the Defendant willfully violated Section 1681c(g) – i.e., whether the Defendant's reading of Section 1681c(g) is objectively reasonable.  See Safeco, 551 at 68-71.  However, to determine this question, the Court must consider the principles of statutory interpretation.

"[S]tatutory analysis necessarily begins with the plain meaning of the law's text and, absent ambiguity, will generally end there." Dobrova v. Holder, 607 F.3d 297, 301 (2d Cir. 2010) (internal quotations omitted) (alteration in original).  In reviewing a statute, the Court "'review[s] the statutory text, considering the ordinary or natural meaning of the words chosen

5

by Congress, as well as the placement and purpose of those words in the statutory scheme.'" Id. (citing United States v. Aguilar, 585 F.3d 652, 657 (2d Cir. 2009)).

    3. <u>The Reasons the Defendant's Interpretation of Section 1681c(g) is Objectively Reasonable</u>

The Defendants' interpretation of Section 1681c(g) is objectively reasonable for a number of reasons. First, the Defendant's interpretation of Section 1681c(g) is consistent with the plain meaning of the statute's text and context. Second, there is also legislative history supporting the Defendant's interpretation of Section 1681c(g). Third, the Defendant's interpretation is consistent with the reasoning of a number of federal courts who reviewed this provision.

    a. <u>Section 1681c(g)'s Plain Language</u>

Again, FACTA Section 1681c(g)(1) provides:

> . . . [N]o person that accepts credit cards or debit cards for the transaction of business shall print more that the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the *point of the sale or transaction*.

(emphasis added). The statute does not define the term "point of the sale or transaction." The Oxford English Dictionary defines "point of sale" as "a place where retail transactions are made, esp. a retail shop; also attrib. (as point-of-sale). Now used esp. of a location at which a retail transaction is recorded electronically." Oxford English Dictionary, http://www.oed.com/view/Entry/146609?redirectedFrom=point+of+sale#eid29386791 (last visited November 9, 2013). Merriam-Webster's Unabridged Dictionary defines "point-of-sale" as "of or relating to the place (as a check-out counter) where an item is purchased <electronic point-of-sale terminals> —abbr. POS," http://www.merriam-webster.com/dictionary/point-of-sale (last visited November 9, 2013). These definitions suggest that the phrase "point of sale" contemplates a physical place within a store or retail establishment where a purchase is

6

consummated, regardless of whether that purchase is consummated electronically. In the Court's view, the inclusion of the language "or transaction" does not alter the meaning of the phrase as limited to in-person exchanges.

Further, the Supreme Court of the United States has explained that because "Congress [ ] use[s] technical words or terms of art, 'it [is] proper to explain them by reference to the art of science to which they are appropriate.'" Corning Glass Works v. Brennan, 417 U.S. 188, 201, 94 S. Ct. 2223, 2231, 41 L. Ed. 2d 1 (1974) (quoting Greenleaf v. Goodrich, 101 U.S. 278, 284, 25 L. Ed. 845 (1880)). As argued by the Defendant, Rona Ostrow and Sweetman R. Smith define "point of sale" as follows:

> (1) That section of the store or department where the sale is consummated, i.e., where the customer pays for and receives the merchandise. This is often the location of point of purchase displays and other promotions. Also called "point of purchase." (2) A register-based data collection system used by retailers.

*The Dictionary of Retailing*, 171, Fairchild Publications (1985) (Rosenthal Decl, Exh B.) This definition refers to an in-person transaction at the conclusion of which a physical receipt is provided from the merchant to the customer.

Also, in other contexts, Congress has used the term "point of sale" to apply to a location. For example, the Food Stamp Act defines "point of sale service" as "any product or service related to the electronic authorization and processing of payments for merchandise at a retail food store." 7 U.S.C. § 2016(i)(11)(A)(iv). The Department of Agriculture requires that "retailers of a covered commodity . . . inform consumers, *at the final point of sale* . . . of the [commodity's] country of origin. . . . 7 U.S.C.A. § 1638a (a) (1) (2007) (emphasis added). The Petroleum Marketing Act requires that fuel retailers display automotive fuel ratings "*at the point of sale* to ultimate purchasers.*" 15 U.S.C. § 2822(c) (2007) (emphasis added). Finally, the Federal Communications Commission requires that providers of commercial mobile service give

notice "*at the point of sale . . . .*" of its election not to transmit emergency alerts, 47 U.S.C. § 1201(b)(1)(b) (2007) (emphasis added).

To be sure, "although Congress has used the term "point of sale" to apply to a location, it has also used the phrase to identify a point in time." Ehrheart v. Bose Corp., CIV.A. 07-350 (GLL), 2008 WL 64491, at *4 (W.D. Pa. Jan. 4, 2008). For instance, Section 707(b)(5) of the National Oilheat Research Alliance Act of 2000, 42 U.S.C. § 6201, (repealed), addressed assessments on oil imported by the owner "*after* the point of sale." § 707(b)(5)(emphasis added).

However, the question before the Court is not whether the Defendant's interpretation of Section 1681c(g) is correct, but rather whether it is objectively reasonable. The fact that Congress has, at times, limited the meaning of the term "point of sale" to a physical location suggests that the Defendant's interpretation is objectively reasonable.

In this regard, whether the Defendant actually acted on the belief that a difference existed between in-store receipts and mailed receipts is irrelevant. Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 377 (3d Cir. 2012)("evidence of subjective bad faith or intent of the defendant is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question.")(citing Safeco, 551 U.S. at 70 n. 20, 127 S. Ct. 2201.).

      b.   Section 1681c(g)'s Language in Context

The Defendant's interpretation is also objectively reasonable in light of the context in which the debated language is used. Subsection 1681c(g)(3) sets out dates by which merchants must become compliant with Section 1681c(g), depending on when the merchant began using the "cash register or other machine or device that electronically prints receipts." § 168c(g)(3). "The citation of the cash register as the lead example of a machine or device used to electronically print a receipt is consistent with the notion that Congress meant to regulate the types of receipts

8

that document in-person transactions between the consumer and the merchant." <u>Shlahtichman v. 1-800 Contacts, Inc.</u>, 615 F.3d 794, 800 (7th Cir. 2010).

          c. <u>Section 1681c(g)'s Legislative History</u>

There is also legislative history supporting the Defendant's interpretation of Section 1681c(g). While judicial reliance on legislative history may not always be appropriate, the Court finds that legislative history can serve an important purpose in determining whether a lay person or entity's interpretation of a statute is objectively reasonable.

In this case, at a Congressional proceeding leading up to FACTA's enactment, Senator Dianne Feinstein explained that she supported the proposed amendment to FCRA that would "create[ ] a national standard for truncating credit card numbers on *store* receipts." 149 Cong. Rec. S13861 (daily ed. Nov. 4, 2003) (statement of Sen. Feinstein) (emphasis added).

In addition, when signing FACTA into law, President George W. Bush noted that: "this law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a credit card number on *store* receipts . . ." Remarks by the President at Signing of the Fair and Accurate Credit Transactions Act, 2 Pub. Papers 1676 (Dec. 4, 2003)(emphasis added).

Further, Representative Tim Mahoney explained that "when consumers go into a *convenience store, restaurant or retailer*, they will notice that their credit card receipt does not contain the full credit card number." 154 Cong. Rec. H00000–29 (daily ed. May 13, 2008) (statement of Rep. Mahoney) (emphasis added).

This legislative history and its focus on in-store transactions reinforces the argument that the Defendant's interpretation of Section 1681c(g) is objectively reasonable.

9

> d. A Number of Courts have found the Defendant's interpretation of Section 1681c(g) to Be Correct

Although the Second Circuit has not addressed the issue yet, a number of federal circuit and district court decisions support the idea that subsection 1681c(g)(1) presumes an in-person transaction after which a physical receipt is provided from a merchant to a customer. Simonoff v. Expedia, Inc., 643 F.3d 1202, 1210 (9th Cir. 2011)("Point of sale" is a term of art that applies to "face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt."); Shlahtichman, 2010 WL 3122786, at *5 ("This language [of Section 1681c(g)(1) ] has a ready application to face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt."); Holt v. LivInn Suites, Inc., CIV. 10-383 (RHK)(RLE), 2010 WL 5834046, at *3 (D. Minn. May 21, 2010)("the language 'receipt provided to the cardholder at the point of the sale or transaction,' brings to mind the passing of a paper receipt between buyer and seller at a store location.")(citation omitted); Smith v. Under Armour, Inc., 593 F. Supp. 2d 1281, 1288 (S.D. Fla. 2008)("transactions involving paper receipts in 'brick and mortar' establishments must comply with FACTA's mandate."); Narson v. Godaddy.com, Inc., 2008 WL 2790211 (PHX)(SRB), at *5 (D. Ariz. May 5, 2008)("This language clearly contemplates a transaction where the customer is present in the location where the sale is made, and where the merchant provides the receipt to the customer at that location.").

The Plaintiff correctly contends that these cases, unlike here, involved receipts sent by e-mail, and merely referred to the language "point of sale or transaction" to support the conclusion that FACTA does not encompass e-mail confirmations. Indeed, in Under Armour, Inc., the Court observed in dictum that a "stronger argument" for coverage under FACTA would exist if

the merchant "enclose[d] a paper receipt with the purchased merchandise upon shipment to the consumer." 593 F. Supp. 2d at 1288 n. 5.

The Plaintiff essentially argues that the e-mail receipt cases are not only not binding upon this Court because they arise from other jurisdictions, but that the cited language is mere dicta. However, the Second Circuit has drawn a distinction "between '*obiter dictum*,' which constitutes an aside or an unnecessary extension of comments, and considered or '*judicial dictum*' where the Court . . . is providing a construction of a statute to guide the future conduct of inferior courts." U.S. v. Bell, 524 F.2d 202, 206 (2d Cir. 1975); see also Patsy's Italian Rest., Inc. v. Banas, 508 F. Supp. 2d 194, 210 n. 11 (E.D.N.Y. 2007)(citing Bell).

While neither form of dictum is binding, of the two, *judicial dictum* is generally entitled to greater weight. See Arar v. Ashcroft, 414 F. Supp. 2d 250, 277 n. 11 (E.D.N.Y. 2006) (stating that judicial dictum "must be given considerable weight and can not be ignored in the resolution of [a] close question."); Am. Overseas Co. v. United States, 17 Cust. Ct. 121, 124 (Cust. Ct. 1946) ("While neither [type of dictum] is binding as a decision, judicial dictum is entitled to much greater weight than the other and should not be lightly disregarded.").

Under the Second Circuit's approach, the language in the above-cited cases regarding the phrase "point of sale or transaction" is best classified as *judicial dictum* rather than *obiter dictum*. Indeed, in all of those cases, the court cited the "point of sale or transaction" language in 1681c(g)(1) as further support for the conclusion that FACTA does not encompass e-mail confirmations. In this regard, the reference to the phrase "point of sale or transaction" was not an "aside or an unnecessary extension of comments."

In any event, even if the relevant language in <u>Simonoff</u> and <u>Shlahtichman</u> were *obiter dictum*, again the proper inquiry here is not the correct interpretation of Section 1681c(g)(1), but rather whether the Defendant's interpretation is objectively reasonable.

Responding to the Defendant's citation of cases, the Plaintiff points to a number of cases <u>holding</u> that the term "point of sale or transaction" denotes a time or event rather than a location.

First, in <u>Ehrheart</u>, the plaintiff ordered headphones over the telephone to be shipped to her home. 2008 WL 64491, at *2. After the Bose employee entered the information into the computer, he printed the receipt, packed it in the box with the headphones, and shipped it to the plaintiff's address. Bose argued that the nonconforming receipt it sent to the plaintiff was not subject to FACTA because "'point of sale' denotes a 'precise location within a store.'" Rejecting this reasoning, the court held that the words "point of sale" "do not appear to have a fixed meaning, but have been defined instead by the context in which they are used." <u>Id.</u> at *4. As the plaintiff in <u>Ehrheart</u> pointed out:

> Defendant's proffered interpretation of the phrase "at the point of sale or transaction' makes no sense in the context of the statute. [It] would draw a distinction between receipts provided to the cardholder at the location of the credit/debit card machine and those receipts provided elsewhere. However, given the obvious purpose of FACTA, i.e., to prohibit the unnecessary inclusion of sensitive credit card information on customer receipts, the relevant factor is not where the receipt is provided to the cardholder, it is that the protected information is wholly unnecessary in the context of providing a customer receipt and its inclusion on such a receipt, no matter where the customer receives it, can lead to identity theft.

<u>Id.</u> at *5.

Second, in <u>Morse v. Katz Delicatessen of Houston St., Inc.</u>, 610-CV-655 (ORL) (DAB), 2010 WL 2889758 (M.D. Fla. July 22, 2010), a receipt was printed by the merchant and mailed to the customer. Relying on <u>Ehrheart</u>, the court held that

> "[t]o distinguish between printed receipts provided in person and those provided elsewhere, as Defendant urges, would ignore the statute's clear text (which clearly contemplates a "transaction"—not just the "point of sale") and the statute's purpose of decreasing the potential for identity theft by eliminating the inclusion of sensitive credit card information."

Id. at *2.

The Court notes that Ehrheart and Morse preceded the appellate guidance issued in Simonoff and Sclahtichamn, and have not been cited by any Circuit Court for the proposition that Section 1681c(g) applies to mailed receipts. Regardless, again the question is not the correct interpretation of Section 1681c(g)(1), but rather whether the Defendant's interpretation is objectively reasonable, which the Court finds it is.

It bears emphazing that Section 1681c only requires an objectively reasonable interpretation, not the most logical interpretation nor the interpretation most consistent with the broad underlying purposes of the statute. But see Ehrheart, 2008 WL 64491, at *5 (noting that "under the Defendant's situs of the sale scenario, the application of FACTA's truncation requirement depends totally on where the customer happened to be standing at the time she received the receipt.").

## II. CONCLUSION

In sum, the Defendant was not willfully noncompliant with FACTA because, absent clear guidance from the Supreme Court or the Second Circuit, the Defendant's interpretation of Section 1681c – as not applying to mailed receipts – is not objectively unreasonable. As noted above, the Defendant's interpretation is consistent with the statute's plain language and consistent with the language read in context. In addition, there is legislative history supporting the Defendant's interpretation, as well as judicial dictum from a number of federal district courts,

as well as the Seventh and Ninth Circuit Court of Appeals. Accordingly, the Court grants the Defendant's motion to dismiss the Plaintiff's complaint.

The Court also grants the Defendant's motion to dismiss the complaint as to Does 1-10. The only allegation in the complaint referencing Does 1-10 is that they are "individual officers . . . who are authorized, directed or participated in the violations complained of." (Compl., at ¶ 18.) Having found that, as a matter of law, no underlying violation occurred, the Court finds that the allegations against Does 1-10 also fail as a matter of law.

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the complaint is granted in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
November 16, 2013

                                                   _*Arthur D. Spatt*_
                                                 ARTHUR D. SPATT
                                                 United States District Judge